UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANJILOAK HATHAWAY,

      Plaintiff,               CIVIL ACTION NO. 14-cv-13964

      v.                         DISTRICT JUDGE PAUL D. BORMAN

COMMISSIONER OF          MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

      Defendant.
_____/

### REPORT AND RECOMMENDATION

Plaintiff Anjiloak Hathaway seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 11) and Defendant's Motion for Summary Judgment (docket no. 12). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.    RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 11) be DENIED and Defendant's Motion for Summary Judgment (docket no. 12) be GRANTED.

## II.   PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income with a protective filing date of December 14, 2011, alleging that she has been disabled since February 18, 2005, due to a growth on her brain, neuropathy, nerve damage in her head and neck, frequent falling, numbness in her arms and hands, and seizures.  (TR 112, 148-53, 165.)  The Social Security Administration denied Plaintiff's claims on July 23, 2012, and Plaintiff requested a *de novo* hearing.  (TR 99-112, 119-21.)  On June 10, 2013, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Patricia S. McKay.  (TR 25-65.)  In a June 28, 2013 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy.  (TR 12-21.)  The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review.  The parties then filed cross motions for summary judgment, which are currently before the Court.

## III.   HEARING TESTIMONY AND MEDICAL EVIDENCE

In her brief, Plaintiff sets forth the procedural history of this matter, summarizes the hearing testimony, and provides a detailed, chronological outline of the medical evidence. (Docket no. 11 at 7-8, 11-16.)  The ALJ set out a detailed, factual recitation with regard to Plaintiff's hearing testimony, Plaintiff's medical record, and the vocational expert's (VE's) testimony in her decision.  (TR 14-21.)  Defendant adopts the ALJ's recitation of the facts. (Docket no. 12 at 4.)  There are no material inconsistencies between Plaintiff's and the ALJ's accounts of the record; therefore, the undersigned will incorporate their factual recitations by reference.  Additionally, the undersigned has conducted an independent review of Plaintiff's

medical record and the hearing transcript and will include comments and citations as necessary throughout this Report and Recommendation.

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of December 14, 2011, and that Plaintiff suffered from the following severe impairments: history of multiple sclerosis (MS); occipital neuralgia/migraine headaches; brain growth near occipital nerve; and cervical degenerative disc disease with nerve damage. (TR 14.) The ALJ also found that Plaintiff's hypertension, kidney infections, sepsis, high cholesterol, and adjustment disorder with anxious mood were non-severe impairments. (TR 14-16.)  Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 16.) The ALJ then found that Plaintiff had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except she must avoid climbing ladders, ropes, and scaffolding; she must avoid using her hands for fine manipulations; she must avoid even moderate exposure to hazards such as moving machinery or heights; she must avoid walking on shifting terrain; she needs to avoid concentrated exposure to pulmonary irritants; she needs to avoid frequent rotation of her head in all direction[s]; she can tolerate only occasional, incidental contact with the public and only occasional interaction with co-workers and supervisors; she is limited to work that is unskilled and simple, routine, and repetitive in nature; and she must be limited to low stress work such that she controls the pace of that work.

(TR 16-19.)  Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 20-21.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time since December 14, 2011, the date the application was filed. (TR 12, 21.)

3

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C.     Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material

5

evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff's argument is muddled and disorganized; nevertheless, the Court will decipher and address the arguments developed by Plaintiff in the "Argument" portion of her brief. In that section, Plaintiff asserts that this matter should be reversed and remanded for an award of benefits under sentence four because (1) Plaintiff's medical condition has deteriorated and worsened since April 28, 2011, the date of a prior, unfavorable ALJ decision; (2) the ALJ improperly substituted her own opinion in place of the examining state agency psychologist's opinion that Plaintiff had a moderate limitation in concentration, persistence, or pace; (3) the ALJ erred by finding that Plaintiff's mental disorder was a non-severe impairment; (4) the ALJ improperly assessed Plaintiff's credibility; and (5) the ALJ failed to pose complete and accurate hypothetical questions to the VE. (Docket no. 11 at 17-28.)

*1.    The ALJ's Application of the Res Judicata Doctrine*

Plaintiff asserts that her condition has worsened since April 28, 2011, the date of a prior unfavorable ALJ decision that addressed Plaintiff's previous applications for benefits. (Docket no. 1 at 17-18.) In making this assertion, Plaintiff seemingly argues that ALJ McKay was not, therefore, bound by the earlier decision. In *Drummond v. Comm'r of Soc. Sec.*, the Sixth Circuit

held that social-security claimants and the Commissioner are barred by principles of res judicata from relitigating issues that have previously been determined. 126 F.3d 837 (6th Cir. 1997). The Commissioner is bound by the principles of res judicata unless there is new and material evidence of changed circumstances. *Id*. at 842; SSAR 98-4(6), 63 FR 29771-01 (June 1, 1998). Where a claimant who has previously been adjudicated "not disabled" seeks to avoid application of res judicata, he must provide proof that his condition has worsened since the date of the prior decision to such a degree that he is no longer capable of engaging in substantial gainful activity. *Vesey v. Comm'r of Soc. Sec.*, No. 11-10967, 2012 WL 4475657, at *10 (E.D. Mich. Aug. 6, 2012) (citations omitted).

On April 28, 2011, Plaintiff was found "not disabled" by ALJ John Dodson, who determined that Plaintiff suffered from a history of multiple sclerosis (MS); occipital neuralgia; migraine headaches; brain growth near occipital nerve; and cervical degenerative disc disease with nerve damage. (TR 86-95.) He further found that Plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform light unskilled work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: no climbing of ladders, ropes, or scaffolds; no fine manipulations; avoid even moderate exposure to hazards such as heights and moving machinery; no exposure to shifting terrain; avoid concentrated exposure to pulmonary irritants; no frequent rotation of the head, in all directions; occasional incidental contact with the public; occasional interaction with coworkers and supervisors.

(TR 89-93.) Thus, ALJ McKay was bound by this determination unless she found new and material evidence of changed circumstances. Plaintiff argues that ALJ McKay erred in finding that Plaintiff was capable of performing light work as limited in the RFC because the record evidence indicates that her brain condition was worsening and that her headaches and seizure spells occurred more often than would be permitted by an employer. (Docket no. 11 at 17-18.)

Defendant argues that the evidence does not indicate as such and that Plaintiff has failed to meet her burden of establishing her RFC, as she has failed to produce any evidence that corroborates her claim that her condition has deteriorated. (Docket no. 12 at 5-11.)

Noting her responsibility under *Drummond*, ALJ McKay found that "there is little to no indication of a worsened condition such that substantial departure from the prior Administrative Law Judge's residual functional capacity would be warranted" but that an additional accommodation for Plaintiff's potential difficulty with handling stress was warranted. (TR 18.) The ALJ supported this assertion by pointing out that Plaintiff did not allege that her impairments had worsened in her Appeal Report. (TR 17.) The ALJ also addressed Plaintiff's representative's assertion that Plaintiff's MS had worsened based on a comparison of a February 2011 MRI and an October 2011 MRI, but the ALJ countered this assertion by pointing out that the result of a July 2012 MRI suggested that the condition had stabilized. (TR 17 (citing TR 365-66).) The ALJ also cited a summary report of Plaintiff's May 7, 2013 neurology appointment at which Plaintiff and her significant other indicated that Plaintiff's episodes had been less frequent over the last several months. (TR 17 (citing TR 397).) The ALJ also noted that Plaintiff's current medical records no longer evidenced a loss of sensation in Plaintiff's hands. (TR 17.)

The only medical evidence that Plaintiff offers to support her contention that her condition has worsened since the previous ALJ decision is the report from her October 2011 MRI, in which Dr. Peter M. Nefcy, M.D., a Board Certified Radiologist, opined that "[t]here has been interval development of additional small lesions in the periventricular and juxtacortical deep white matter bilaterally." (Docket no. 11 at 17 (citing TR 247).) What Plaintiff does not highlight, however, is Dr. Nefcy's continued opinion that those lesions may have been present,

8

but obscured, in the February 2011 MRI, and as compared to that MRI, the overall appearance of Plaintiff's brain was unchanged. (TR 247.) Plaintiff also argues that both she and her friend, Mr. Brooks, testified that her spells were occurring more often, but, as noted above, the ALJ specifically addressed this aspect of their testimony and found it to be incredible. (Docket no. 11 at 18; TR 17.)

Plaintiff has not sufficiently provided proof that her condition has worsened since the date of the prior decision to such a degree that she is no longer capable of engaging in substantial gainful activity. Accordingly, the ALJ's determination that "there is little to no indication of a worsened condition such that substantial departure from the prior Administrative Law Judge's residual functional capacity would be warranted" is supported by substantial evidence. The undersigned finds that ALJ McKay did not err in her application of *Drummond*; Plaintiff's Motion should be denied with regard to this issue.

### 2. The ALJ's Assessment of Plaintiff's Mental RFC

In her brief, Plaintiff alleges that her "ability to perform simple routine, repetitive work with limited stress and the ability to [do] self-pace work activity is not supported by the psychological reports in the record" and that the ALJ's finding that Plaintiff had no limitation in activities of daily living, a mild limitation in social functioning, and a mild limitation in concentration, persistence, or pace is contrary to the medical evidence of record. (Docket no. 11 at 20, 24.) Plaintiff spends several paragraphs summarizing the June 8, 2012 and July 13, 2012 reports of the psychological evaluations conducted by Patricia Madej, Ph.D., LP, but she does not develop these general arguments any further.

The only cognizable argument that Plaintiff sets forth in regard to Plaintiff's mental RFC is that the ALJ improperly substituted her own opinion in place of the examining state agency

9

psychologist's opinion that Plaintiff had a moderate limitation in concentration, persistence, or pace. (Docket no. 20-23.) The ALJ discussed Plaintiff's limitations in concentration, persistence, or pace as follows:

> In this area, the claimant has mild limitation. The claimant drives an automobile; she puts together jigsaw puzzles; she exhibited cognitive abilities in the broad average to superior range; she had exceptional short-term memory recall suggestive of potential for sustained short-term attention and concentration which the consultative examiner noted should facilitate the processing of complex information and ease new learning for her (Exhibit B6F). The undersigned finds the claimant has no more than mild limitation in this area. Nonetheless, the undersigned has accommodated some difficulty in this area (and in social functioning) by limiting the claimant's exposure to others and by limiting her to unskilled, simple, routine, repetitive, self-paced work.

(TR 15.) With regard to the opinion of the state agency examining psychologist, Jerry Csokasy, Ph.D., the ALJ stated:

> The undersigned accords some weight to the state agency psychological examiner's opinion at Exhibit B3A, but declines to adopt the portion indicating moderate limitation in concentration persistence, or pace, as such is simply inconsistent with noted capabilities at Exhibit B6F . . . which indicated significant capabilities and no more than mild (i.e. GAF 65) seizure-free symptomatology.

(TR 16.)

Courts in this district draw a distinction between cases in which a medical expert finds a moderate deficiency in concentration, persistence, or pace from those in which the ALJ independently finds such a limitation. "When the ALJ has found such a limitation, the ALJ must incorporate these limitations into the hypothetical questions." *McPhee v. Comm'r of Soc. Sec.*, No. 11-13399, 2013 WL 1277889, at *2 (E.D. Mich. Mar. 27, 2013) (citations omitted). Courts are more likely to order a sentence-four remand in cases where the ALJ made the finding of moderate deficiencies in concentration, persistence, or pace in the absence of a medical opinion that found similar moderate deficiencies and indicated that the plaintiff was still capable of

sustained work. *Cwik v. Comm'r of Soc. Sec.*, No. 10-15121, 2012 WL 1033578, at *10 (E.D. Mich. Feb. 23, 2012) (citing *Hicks v. Comm'r of Soc. Sec.*, No. 10-13643, 2011 WL 6000701, at *4 (E.D. Mich. Nov. 28, 2011)). Findings of moderate limitations in concentration, persistence, or pace do not necessarily preclude "simple, routine, unskilled work." *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844-BC, 2010 WL 3905375, at *2 (E.D. Mich. Sept. 30, 2010) (citations omitted). Such limitations may, however, result in the claimant being unable to meet quotas, stay alert, or work at a consistent rate of speed. *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005).

Here, in conducting a mental RFC assessment of Plaintiff, Dr. Csokasy determined that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace, but found that Plaintiff was capable of performing simple, routine tasks on a sustained basis in a low-stress environment. (TR 104, 107-08.) The ALJ determined that Plaintiff's limitation in concentration, persistence, or pace was only mild, but found that Plaintiff was limited to unskilled, simple, routine, and repetitive work. (TR 16.) The ALJ further limited Plaintiff to low-stress work such that she would control the pace of that work. (TR 16.) Thus, even though the ALJ found that Plaintiff's limitation in concentration, persistence, or pace was mild as compared to Dr. Csokasy's opinion that it was moderate, the ALJ placed more limitations on Plaintiff's mental RFC than Dr. Csokasy did, namely, that Plaintiff was limited to low-stress work such that she would control the pace of the work. Accordingly, any error committed by the ALJ in discounting Dr. Csokasy's opinion on the basis of concentration, persistence, or pace is harmless; Plaintiff's argument fails in this regard.

Furthermore, as noted above, a limitation to self-paced work is a common and adequate limitation for those persons who suffer from moderate difficulties in concentration, persistence,

or pace. *See Edwards, supra*. Notably, Plaintiff does not explain what additional limitations the ALJ should have imposed. There is no error here on the part of the ALJ, as the ALJ appropriately accommodated for Plaintiff's limitations in concentration, persistence, or pace, whether mild or moderate, in the RFC. It is, therefore, recommended that Plaintiff's Motion for Summary Judgment on this issue be denied.

### 3. The ALJ's Step-Two Determination

Plaintiff suggests that the ALJ erred when she determined that Plaintiff's adjustment disorder with anxious mood was a non-severe impairment. (Docket no. 11 at 24.) A severe impairment or combination of impairments is one that significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted). But the step-two severity analysis is simply a threshold determination. It is well established that "once any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps," and it becomes "legally irrelevant" that other impairments are not considered severe. *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). This is so because the second step is designed simply to screen out and dispose of baseless claims. *Anthony*, 266 F. App'x at 457. Stated differently, as long as the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe

impairments at step two does not constitute reversible error. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, the ALJ engaged in a lengthy discussion of Plaintiff's adjustment disorder with anxious mood, including an evaluation of the disorder under section 12.00C of the Listing of Impairments. (TR 15-16.) Additionally, when discussing Plaintiff's RFC, the ALJ noted that Plaintiff's depression and anxiety were stable. (TR 18.) The ALJ also cited to record evidence in which Plaintiff stated that her episodes seemed to be caused by strong emotion, stress, or excitement, and the ALJ explicitly accommodated for those issues by limiting Plaintiff to simple, routine, repetitive, and low-stress work such that Plaintiff would be able to control the pace of the work. (TR 17, 18, 19 (citing TR 397).) Thus, the ALJ properly considered Plaintiff's non-severe impairment of adjustment disorder with anxious mood at the remaining steps of the sequential evaluation process, and Plaintiff's Step-Two challenge fails.

### 4. *The ALJ's Assessment of Plaintiff's Credibility*

Next, Plaintiff challenges the ALJ's credibility determination as erroneous and not supported by the evidence of record. (Docket no. 11 at 24-26.) "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It

13

is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Here, the ALJ considered and discussed Plaintiff's hearing testimony and other subjective complaints in conjunction with the record evidence, and she found that Plaintiff's allegations were not entirely credible. (TR 16-19.) In reaching this determination, the ALJ pointed out that the summary report of Plaintiff's May 7, 2013 neurological examination directly contradicts Plaintiff and Mr. Brooks's testimony that her seizures have been occurring more frequently. Indeed, the report indicates that at the examination, both Plaintiff and her significant other disclosed that her seizures had been less frequent over the last several months.

14

(TR 397.) The ALJ discussed Plaintiff's testimony that she has been restricted to lifting no more than five pounds and that she has intermittent numbness in her hands but found that those allegations were unsupported by the record evidence, particularly noting that Plaintiff's current records suggest that she has no loss of sensation in her hands. The ALJ also reasoned that Plaintiff's medication was helping with her discomfort and preventing her seizures. (TR 18 (citing TR 228).) Additionally, the ALJ acknowledged that Plaintiff's seizures were precipitated or aggravated by stress, and accounted for that in her RFC assessment. The ALJ further reasoned that despite Plaintiff's complaints of "spell-like confusional states" and seizure activity, Plaintiff's September 2012, October 2012, and January 2013 neurology examinations were normal and unremarkable.

Plaintiff argues that the treatment notes and records from her neurologist confirm her testimony regarding her pain, seizures and spells. (Docket no. 11 at 24-25.) She also highlights Dr. J. Matthew Voci, M.D.'s January 2013 letter in which he states that Plaintiff was still having seizures despite the use of Depakote and requests that Plaintiff be granted disability. (Docket no. 11 at 25 (citing TR 393).) The ALJ, however, accorded no weight to Dr. Voci's letter, finding it to be conclusory, entirely based upon Plaintiff's subjective complaints, lacking in objective medical support, and an opinion on an issue reserved to the Commissioner. (TR 18-19.) It is not the Court's function to reweigh or resolve conflicts in the evidence. As discussed above, the ALJ provided specific reasons for discounting Plaintiff's credibility in her decision, many of which apply the factors set forth in 20 C.F.R. § 416.929(c)(3). Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the Court the weight that she gave to Plaintiff's statements and the reasons for that weight. The ALJ's assessment of Plaintiff's

credibility is supported by substantial evidence and should not be disturbed; Plaintiff's Motion should be denied in this regard.

### 5. *The ALJ's Hypothetical Questions to the VE*

Plaintiff argues that the ALJ asked the VE incomplete and inaccurate hypothetical questions because the evidence of record demonstrates that Plaintiff has moderate limitations in concentration, persistence, or pace, and that she experiences seizures or spells that impact her more than one day per month. (Docket no. 11 at 26-28.) In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). The Sixth Circuit has held that hypothetical questions to experts are not required to include lists of a claimant's medical impairments. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). As discussed above, the ALJ incorporated Plaintiff's limitations in concentration, persistence, and pace into the RFC, but she did not find Plaintiff's testimony regarding the frequency of her seizures to be credible. Here, the ALJ incorporated all of Plaintiff's limitations that she found credible into Plaintiff's RFC, presented those limitations to the VE in her hypothetical questions, and the VE testified that such an individual would not be capable of performing Plaintiff's prior work, but that there were jobs available for a person with these limitations, which the VE cited in detail. The ALJ properly relied on the VE's testimony to find that there are significant numbers of jobs available which Plaintiff can perform. Accordingly, Plaintiff's Motion should be denied in this regard.

### 6. *Plaintiff's Other Arguments*

To the extent that Plaintiff sets forth other arguments in her brief, such as that the ALJ failed to properly assess the opinions of Plaintiff's neurologist or the consultative examiner, such

arguments are completely undeveloped. For instance, Plaintiff makes general allegations in her Statement of Questions Presented and Conclusion that the ALJ did not give proper weight to her treating physician. (Docket no. 11 at 7, 29.) In the Argument portion of her brief, Plaintiff recites portions of Dr. Voci's treatment notes and January 2013 letter opinion (*Id*. at 23-25), but she does not at any point discuss the ALJ's assessment of Dr. Voci's opinion or set forth an argument regarding why it was erroneous. With regard to the consultative examiner, Dr. Madej, Plaintiff asserts that the ALJ either mischaracterized or ignored items in Dr. Madej's report; however, Plaintiff fails to address Dr. Madej's opinion that Plaintiff does not have "any obvious cognitive deficits that would interfere with employability and she appears to be relatively free of major psychopathology," or the fact that the ALJ placed restrictions on Plaintiff's employability where Dr. Madej did not. (*Id*. at 23; TR 372.) The Court is not obligated to develop these arguments on Plaintiff's behalf, and it declines to do so. *See Bush v. Astrue*, No. 12-11790, 2013 WL 1747807, at *14 (E.D. Mich. Jan. 25, 2013) (Grand, M.J.) (citation omitted).

## VI. CONCLUSION

For the reasons stated herein, the Court should DENY Plaintiff's Motion for Summary Judgment (docket no. 11) and GRANT Defendant's Motion for Summary Judgment (docket no. 12).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard*

*v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: November 3, 2015          s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: November 3, 2015          s/ Lisa C. Bartlett
                                 Case Manager

18